IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| RICHARD K. COOK, | |
|---|---|
| Petitioner, | 8:18CV332 |
| vs. | |
| BRAD HANSEN, Warden - TSCI; SCOTT FRAKES, Director - Nebraska; and DEPARTMENT OF CORRECTIONAL SERVICES, | MEMORANDUM AND ORDER |
| Respondents. | |

This matter is before the court on preliminary review of Petitioner Richard K. Cook's Petition for Writ of Habeas Corpus (filing no. 1) brought pursuant to 28 U.S.C. § 2254. The purpose of this review is to determine whether Petitioner's claims, when liberally construed, are potentially cognizable in federal court. Condensed and summarized for clarity, Petitioner's claims[1] are:

Claim One: Petitioner was denied effective assistance of counsel because trial counsel **(1)** failed to investigate DNA evidence by not hiring a DNA expert and failing to file a "Motion to Produce all Physical Evidence and DNA Material for Independent Testing" (filing no. 1 at CM/ECF pp. 25–27); **(2)** failed to motion the court for a continuance in order to further investigate Mike Hornbacher ("Hornbacher") after mixed DNA results were obtained from Hornbacher's DNA testing (id. at CM/ECF p. 25); **(3)** failed to object to the "lack of

---

[1] For reference of the parties, the court will cite to the pages of Petitioner's habeas petition from which it construed each of Petitioner's claims.

probable cause" testimony from Nebraska State Patrol ("NSP") Inv. Charlie O'Callahan (*id*. at CM/ECF pp. 25, 36); **(4)** failed to investigate and pursue evidence against Hornbacher prior to trial (*id*. at CM/ECF pp. 31, 36–37); **(5)** failed to move for a mistrial based on law enforcement's improper seizure and transportation of Petitioner from Iowa to Nebraska at time of his arrest (*id*. at CM/ECF p. 34); **(6)** failed to investigate or inform the trial court and prosecution that Douglas County Sheriff Captain Dan McGovern had discussed evidence from Petitioner's case in a class he taught at Iowa Western Community College (*id*. at CM/ECF p. 38); **(7)** failed to request a mistrial or removal of Prosecutor Leigh Ann Retelsdorf ("Retelsdorf") due to Retelsdorf's conflict of interest (*id*. at CM/ECF pp. 41–42); **(8)** failed to object and/or move for a mistrial as to the prosecution's use of Petitioner's invocation of his rights to remain silent and to counsel after his arrest and to testify on his own behalf in violation of the Fifth, Sixth, and Fourteenth Amendments (*id*. at CM/ECF p. 43); **(9)** failed to object and/or move for a mistrial as to Retelsdorf's misconduct in misrepresenting the DNA evidence and calling Petitioner a "rapist" and "manipulator" (*id*. at CM/ECF pp. 44, 67); **(10)** failed to prepare adequately for the Rape Shield Law hearing (*id*. at CM/ECF pp. 45, 68); **(11)** utilized and failed to object or move for mistrial as to untried, uncharged "prior bad acts" evidence (*id*. at CM/ECF pp. 47–49); **(12)** failed to effectively utilize investigative tools at counsel's disposal, such as a private investigator, and obtain missing evidence critical to the defense (*id*. at CM/ECF p. 52); **(13)** failed to object or move for a mistrial as to the following instances of

prosecutorial misconduct: Retelsdorf vouching for witness Hornbacher's credibility through a leading question, Retelsdorf eliciting testimony from Jeanette Cook that was contrary to the evidence, and the prosecution misstating Petitioner's testimony, the ballistic evidence, evidence regarding injuries to Hornbacher, and improperly instructing the jury on the law during closing arguments (*id*. at CM/ECF pp. 56–57, 74); **(14)** failed to make an offer of proof regarding Petitioner's excluded testimony about conversations he had with Hornbacher (*id*. at CM/ECF p. 60); **(15)** had Petitioner remove his suit jacket, show the shock belt restraint system to the jury, and explain how it worked when Petitioner took the stand to testify in his own defense (*id*. at CM/ECF p. 64); **(16)** withdrew from Petitioner's case after trial on the outright lie that counsel "was retiring from the practice of law" (*id*. at CM/ECF p. 66); **(17)** failed to show the jury an exhibit called "23 Reasons for Reasonable Doubt" that counsel had agreed with Petitioner to show during closing arguments (*id*. at CM/ECF p. 66); **(18)** failed to call multiple defense witnesses or the customer service representative that Hornbacher had lied to about his phone being stolen (*id*. at CM/ECF p. 66); **(19)** operated under conflicts of interest due to his prior representation of Janelle Elster, Petitioner's former girlfriend, and his connections to Douglas County Sheriff's Office Crime Scene Investigator Commander David Koefed ("Koefed") and the Douglas County Sheriff's Office (*id*. at CM/ECF pp. 25, 66); **(20)** refused Petitioner's request to play a videotape of Hornbacher giving a videotaped statement to NSP investigators (*id*. at CM/ECF p. 67); **(21)** stood

3

silent and failed to object during the death penalty hearing when prosecutors did not stand silent (*id*. at CM/ECF p. 67); and **(22)** failed to request proper jury instructions (*id*. at CM/ECF pp. 71–74).

Claim Two: Petitioner was denied effective assistance of counsel *because* appellate counsel failed to raise on direct appeal **(1)** Kofoed planted evidence used at Petitioner's trial and Petitioner's concerns that Kofoed lied on the stand (*id*. at CM/ECF p. 25); **(2)** law enforcement's improper seizure and transportation of Petitioner from Iowa to Nebraska at time of his arrest (*id*. at CM/ECF p. 34); **(3)** Douglas County Sheriff Captain Dan McGovern's misconduct in discussing evidence from Petitioner's case in a class he taught at Iowa Western Community College (*id*. at CM/ECF p. 38); **(4)** trial counsel's failure to seek a mistrial or removal of Retelsdorf due to her conflict of interest (*id*. at CM/ECF pp. 41–42); **(5)** prosecution's use of Petitioner's invocation of his rights to remain silent and to counsel after his arrest and to testify on his own behalf in violation of the Fifth, Sixth, and Fourteenth Amendments (*id*. at CM/ECF p. 43); **(6)** Retelsdorf's misconduct in misrepresenting the DNA evidence and calling Petitioner a "rapist" and "manipulator" (*id*. at CM/ECF p. 44); **(7)** all instances of improper use of untried, uncharged "prior bad acts" evidence (*id*. at CM/ECF pp. 47–49); **(8)** prosecution's and law enforcement's failure to turn over all evidence in the case to the defense in violation of *Brady v. Maryland* (*id*. at CM/ECF p. 52); **(9)** prosecution and trial judge knowingly permitted and encouraged Hornbacher to commit perjury during his trial testimony in violation of

Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments (*id*. at CM/ECF p. 54); **(10)** trial counsel's failure to object or move for a mistrial as to the following instances of prosecutorial misconduct: Retelsdorf vouching for witness Hornbacher's credibility through a leading question, Retelsdorf eliciting testimony from Jeanette Cook that was contrary to the evidence, and the prosecution misstating Petitioner's testimony, the ballistic evidence, evidence regarding injuries to Hornbacher, and improperly instructing the jury on the law during closing arguments (*id*. at CM/ECF pp. 56–57); **(11)** ineffectiveness of trial counsel in having Petitioner reveal and explain to the jury the shock belt restraint system Petitioner wore during trial (*id*. at CM/ECF p. 64); and **(12)** trial counsel's failure to request and trial court's failure to give proper jury instructions (*id*. at CM/ECF p. 71).

Claim Three: Petitioner was denied the constitutional right to a fair trial, due process, and effective assistance of counsel because **(1)** the prosecution and trial counsel spoke to the media about the DNA evidence in Petitioner's case; **(2)** trial counsel failed to correct the prosecution's inaccurate statements to the media about the DNA evidence; and **(3)** appellate counsel failed to raise on direct appeal the ineffectiveness of trial counsel and prosecutorial misconduct based on their statements to the media. (*Id*. at CM/ECF pp. 50–51.)

Claim Four: Petitioner was denied his right to due process because **(1)** Kofoed and other law enforcement engaged in improper collection, handling, storage, and fabrication of evidence

5

|              | used at Petitioner's trial[2] (*id*. at CM/ECF pp. 25–27); **(2)** law enforcement and prosecution committed misconduct by failing to adequately investigate Hornbacher and seek a search warrant as to Hornbacher (*id*. at CM/ECF p. 36); and **(3)** law enforcement violated Petitioner's right to remain silent and to consult with an attorney contrary to *Doyle v. Ohio*, 426 U.S. 610 (1976) (*id*. at CM/ECF p. 43). |
|---|---|
| Claim Five: | Petitioner was denied his rights against unreasonable search and seizure and to due process because law enforcement failed to obtain valid Iowa search or arrest warrants before arresting Petitioner in Iowa and transporting Petitioner and his vehicle to Omaha, Nebraska without proper extradition or waiver of the same. (*Id*. at CM/ECF p. 34.) |
| Claim Six: | Petitioner was denied his constitutional rights to a fair trial and due process because: **(1)** Retelsdorf committed prosecutorial misconduct because she had a conflict of interest that she failed to disclose to the trial court and she failed to remove herself from the prosecution once the conflict was revealed (*id*. at CM/ECF pp. 41–42); **(2)** the trial court abused its discretion when it failed to remove Retelsdorf for her conflict of interest and failed |

---

[2] To the extent Petitioner frames this claim as a challenge to the Nebraska Supreme Court's decision affirming the state district court's denial of an evidentiary hearing and dismissing Petitioner's motion for postconviction relief as to the allegations involving Kofoed planting evidence, such a claim is not cognizable in a federal habeas action as it is based on errors in the state postconviction proceedings. Errors during state postconviction review are not cognizable in a federal habeas corpus action. *See Jenkins v. Houston*, 4:05CV3099, 2006 WL 126632 (D. Neb. 2006) (collecting cases).

|               | to hold a hearing to determine the impact of the conflict on the proceedings (*id*. at CM/ECF p. 42); **(3)** Retelsdorf committed prosecutorial misconduct in misrepresenting the DNA evidence and calling Petitioner a "rapist" and "manipulator" and the trial court failed to give a limiting instruction to counter Retelsdorf's unprofessional behavior (*id*. at CM/ECF p. 44); **(4)** the prosecution committed misconduct by using evidence at trial of untried, uncharged "prior bad acts" alleged to have been committed by Petitioner (*id*. at CM/ECF p. 47); **(5)** the prosecution failed to turn over all evidence in the case to the defense in violation of *Brady v. Maryland* (*id*. at CM/ECF p. 52); **(6)** the prosecution and trial judge knowingly permitted and encouraged Hornbacher to commit perjury during his trial testimony (*id*. at CM/ECF p. 54); and **(7)** the prosecution committed misconduct because Retelsdorf vouched for witness Hornbacher's credibility through a leading question, Retelsdorf elicited testimony from Jeanette Cook that was contrary to the evidence, and the prosecution misstated Petitioner's testimony, the ballistic evidence, evidence regarding injuries to Hornbacher, and improperly instructed the jury on the law during closing arguments (*id*. at CM/ECF pp. 56–57). |
|---|---|
| Claim Seven: | Petitioner was denied effective assistance of counsel because trial and appellate counsel did not object, move for a mistrial, nor appeal the trial court's abuse of its judicial discretion by: **(1)** acting improperly and as a third prosecutor on multiple occasions (*id*. at CM/ECF pp. 75–76); **(2)** refusing to allow Petitioner's testimony about his conversation with Hornbacher (*id*. at pp. 60, 75); **(3)** |

7

failing to hold hearings on the conflict of interest involving Petitioner's trial counsel (*id*. at CM/ECF p. 75); **(4)** "crafting the testimony of a prosecution witness—a Douglas County Sheriff whom had discovered the truck driven by the victim" (*id*.); (5) overruling defense counsel's request for a continuance for production of Hornbacher's clothing and shoes, to have forensics examinations completed on the items, and to have the items brought into evidence (*id*. at CM/ECF pp. 31, 75); **(6)** allowing the jury to hear "prior bad act" evidence (*id*. at CM/ECF pp. 75–76); **(7)** failing to hold the Rape Shield Law hearing in camera and refusing defense counsel's request for a continuance (*id*. at CM/ECF pp. 44–45, 76); **(8)** failing to grant a directed verdict on the issue of sexual assault (*id*. at CM/ECF pp. 75–76); **(9)** suppressing the testimony of Deputy Sellers and multiple pieces of evidence due to its misinterpretation of the Rape Shield Law (*id*. at CM/ECF pp. 45–46, 76); **(10)** failing to properly instruct the jury (*id*. at CM/ECF pp. 71, 75); **(11)** partially excluding a letter from Jeanette Cook to Petitioner (*id*. at CM/ECF p. 75); and **(12)** refusing to allow up to five defense witnesses to give relevant testimony to the jury that directly contradicted Hornbacher's testimony (*id*. at CM/ECF pp. 75–76).

Claim Eight: Petitioner was denied effective assistance of counsel *because* postconviction counsel: **(1)** failed to properly assign and argue 27 out of 28 postconviction claims so that the 27 claims were dismissed without being decided on the merits (*see, e.g.*, *id*. at CM/ECF p. 25, 68); **(2)** failed to raise on final postconviction appeal 5 out of 7

8

claims on which an evidentiary hearing had been held (*id*. at CM/ECF p. 68); **(3)** failed to assign all claims as ineffective assistance of appellate counsel claims (*id*.); **(4)** failed to amend Petitioner's postconviction motion (*id*.); and **(5)** operated under a conflict of interest due to postconviction counsel contacting Petitioner about the DNA evidence before he represented Petitioner and postconviction counsel being a former partner of Petitioner's previous postconviction counsel (*id*.).

**With the exception of Claim Eight**, the court determines that Petitioner's claims, when liberally construed, are potentially cognizable in federal court. However, the court cautions Petitioner that no determination has been made regarding the merits of these claims or any defenses to them or whether there are procedural bars that will prevent Petitioner from obtaining the relief sought. Claim Eight is not a cognizable habeas corpus claim because "claims based on ineffective assistance of counsel and other constitutional deprivations during state postconviction proceedings are not cognizable in a federal habeas corpus action." *Jenkins v. Houston*, No. 4:05CV3099, 2006 WL 126632, at *1 (D. Neb. Jan. 17, 2006) (collecting cases). **Claim Eight is dismissed. However, Respondents should be mindful of and, if necessary, respond to Petitioner's allegations in his habeas petition that the ineffectiveness of his postconviction counsel excuses any exhaustion requirements or procedural defaults.** (*See, e.g.*, Filing No. 1 at CM/ECF pp. 20–23.)

IT IS THEREFORE ORDERED that:

1. Upon initial review of the habeas corpus petition (filing no. 1), the court preliminarily determines that Petitioner's claims, as they are set forth in this Memorandum and Order, are potentially cognizable in federal court with the exception of Claim Eight. **Claim Eight is dismissed.**

9

2. By **March 14, 2019**, Respondents must file a motion for summary judgment or state court records in support of an answer. The clerk of the court is directed to set a pro se case management deadline in this case using the following text: **March 14, 2019**: deadline for Respondents to file state court records in support of answer or motion for summary judgment.

3. If Respondents elect to file a motion for summary judgment, the following procedures must be followed by Respondents and Petitioner:

> A. The motion for summary judgment must be accompanied by a separate brief, submitted at the time the motion is filed.
>
> B. The motion for summary judgment must be supported by any state court records that are necessary to support the motion. Those records must be contained in a separate filing entitled: "Designation of State Court Records in Support of Motion for Summary Judgment."
>
> C. Copies of the motion for summary judgment, the designation, including state court records, and Respondents' brief must be served on Petitioner *except* that Respondents are only required to provide Petitioner with a copy of the specific pages of the record that are cited in Respondents' motion and brief. In the event that the designation of state court records is deemed insufficient by Petitioner or Petitioner needs additional records from the designation, Petitioner may file a motion with the court requesting additional documents. Such motion must set forth the documents requested and the reasons the documents are relevant to the cognizable claims.
>
> D. No later than 30 days following the filing of the motion for summary judgment, Petitioner must file and serve a brief in

opposition to the motion for summary judgment. Petitioner may not submit other documents unless directed to do so by the court.

E.  No later than 30 days after Petitioner's brief is filed, Respondents must file and serve a reply brief. In the event that Respondents elect not to file a reply brief, they should inform the court by filing a notice stating that they will not file a reply brief and that the motion is therefore fully submitted for decision.

F.  If the motion for summary judgment is denied, Respondents must file an answer, a designation and a brief that complies with terms of this order. (*See* the following paragraph.) The documents must be filed no later than 30 days after the denial of the motion for summary judgment. **Respondents are warned that failure to file an answer, a designation and a brief in a timely fashion may result in the imposition of sanctions, including Petitioner's release.**

4. If Respondents elect to file an answer, the following procedures must be followed by Respondents and Petitioner:

A.  By **March 14, 2019**, Respondents must file all state court records that are relevant to the cognizable claims. *See*, *e.g.*, Rule 5(c)-(d) of the *Rules Governing Section 2254 Cases in the United States District Courts*. Those records must be contained in a separate filing entitled: "Designation of State Court Records in Support of Answer."

B.  No later than 30 days after the relevant state court records are filed, Respondents must file an answer. The answer must be

accompanied by a separate brief, submitted at the time the answer is filed. Both the answer and the brief must address all matters germane to the case including, but not limited to, the merits of Petitioner's allegations that have survived initial review, and whether any claim is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, a statute of limitations, or because the petition is an unauthorized second or successive petition. *See*, *e.g.*, Rules 5(b) and 9 of the *Rules Governing Section 2254 Cases in the United States District Courts*.

C. Copies of the answer, the designation, and Respondents' brief must be served on Petitioner at the time they are filed with the court *except* that Respondents are only required to provide Petitioner with a copy of the specific pages of the designated record that are cited in Respondents' answer and brief. In the event that the designation of state court records is deemed insufficient by Petitioner or Petitioner needs additional records from the designation, Petitioner may file a motion with the court requesting additional documents. Such motion must set forth the documents requested and the reasons the documents are relevant to the cognizable claims.

D. No later than 30 days after Respondents' brief is filed, Petitioner must file and serve a brief in response. Petitioner must not submit any other documents unless directed to do so by the court.

E. No later than 30 days after Petitioner's brief is filed, Respondents must file and serve a reply brief. In the event that Respondents elect not to file a reply brief, they should inform the court by filing a notice stating that they will not file a reply

brief and that the merits of the petition are therefore fully submitted for decision.

F. The clerk of the court is directed to set a pro se case management deadline in this case using the following text: **April 15, 2019**: check for Respondents' answer and separate brief.

5. No discovery shall be undertaken without leave of the court. *See* Rule 6 of the *Rules Governing Section 2254 Cases in the United States District Courts*.

Dated this 28th day of January, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

13